```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                         WESTERN DIVISION


MARY COOK                                               PLAINTIFF

VS.                         CIVIL ACTION NO. 5:05-cv-19(DCB)(JMR)

PAYLESS SHOESOURCE, INC.                                DEFENDANT
```

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendant Payless ShoeSource, Inc. ("Payless")'s motion for summary judgment **(docket entry 34)** and supplement thereto **(docket entry 40)**. Having considered the motion and response, the memoranda of the parties and all supporting documents, as well as the applicable law, the Court finds as follows:

The plaintiff, Mary Cook ("Cook"), on July 23, 2003, tripped and fell on the sidewalk in front of the defendant's store on Clay Street in Vicksburg, Mississippi. The plaintiff alleges that Payless's premises were not in a reasonably safe condition, and that because of the condition of the sidewalk, she fell while stepping from the parking lot to the sidewalk. The defendant moves for summary judgment on the grounds that no dangerous condition existed and that it was not negligent in any way.

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ... ." Fed.R.Civ.P. 56(c). In determining whether there are any genuine issues of material fact,

this Court must first turn to the applicable law to discern what factual issues are, indeed, material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Fields v. City of South Houston, Tex.</u>, 922 F.2d 1183, 1187 (5th Cir. 1991).  Then, the Court must examine the evidence of the type listed in Rule 56(c) to detect the existence or non-existence of a material issue.  <u>Id.</u>, at 1187. Further, "... summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  The Fifth Circuit has added:

> Both the Supreme Court and this circuit have addressed, at length, how much evidence the nonmoving party must present.  The Supreme Court explained that the standard for granting summary judgment mirrors the standard for a directed verdict. ... "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ... ." ... Nor is the "mere existence of a scintilla of evidence" sufficient ... .  This circuit has described the amount of evidence the nonmoving party must bring forward as "significant probative evidence." ... This may be equated with the "substantial evidence" standard used to determine whether a directed verdict is appropriate.

<u>State Farm Life Ins. Co. v. Gutterman</u>, 896 F.2d 116, 118 (5th Cir. 1990)(citations omitted).

The moving party bears the initial burden of establishing the absence of genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Lavespere v. Niagara Mach. & Tool Works</u>, 910 F.2d 167, 178 (5th Cir. 1990).

Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show

that summary judgment is inappropriate, by establishing the existence of all of the essential elements of that party's cause of action on which the nonmovant will bear the burden of proof at trial. Lavespere, 910 F.2d at 178; Carpenter v. Gulf States Mfrs., Inc., 764 F.Supp. 427 (N.D. Miss. 1991). The nonmoving party cannot successfully defeat a motion for summary judgment through the use of unsworn statements or suggestions of imminent supporting proof at trial. Pope v. Mississippi Real Estate Comm., 695 F.Supp. 253 (N.D. Miss. 1988), aff'd 872 F.2d 127 (5th Cir. 1989). The nonmoving party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); Fields, 922 F.2d at 1187. If the opponent fails in his duty, summary judgment is implicated. Id.

 The Court must view the evidence submitted by the parties in the light most favorable to the nonmoving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984). In addition, the Court must "indulge every reasonable inference from [the] facts in favor of the party opposing the motion." Powers v. Nassau Development Corp., 753 F.2d 457, 462 (5th Cir. 1985).

 Under Mississippi law, in a premises liability case the Court must first establish the status of the injured party: invitee, licensee, or trespasser. Thompson v. Chick-Fil-A, Inc., 923 So.2d 1049, ____ (Miss.App. 2006). In this case, it is undisputed that Cook was on her way to the Payless store to return a pair of shoes,

3

and was thus a business invitee of the defendant.[1]

The second step is to establish the duty owed by the defendant to the plaintiff. Id. It should be noted here that a determination of the defendant's legal status vis-a-vis the sidewalk on which Cook fell is part of the plaintiff's necessary prima facie case. Brookhaven Funeral Home, Inc. v. Hill, 820 So.2d 3, 6 (Miss.App. 2002). A municipality has "a non-delegable duty to maintain its sidewalks and other public ways in a reasonably safe condition." Bell v. city of Bay St. Louis, 467 So.2d 657, 659 (Miss. 1985). An abutting landowner is liable for the injuries on a municipal sidewalk only if its tortious conduct causes a dangerous condition on the sidewalk to arise. Rosenbaum Realty Co. v. Tolbert, 142 Miss. 710, 107 So. 422, 423 (1926)(emphasis added). However, where a private landowner owns or maintains the sidewalk, it is responsible for maintaining its sidewalk in a reasonably safe condition. Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473, 476 (Miss. 1967).

---

[1] Under Mississippi law, "an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage, while a licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner." Martin v. B.P. Exploration & Oil, Inc., 769 So.2d 261, 263-64 (Miss.App. 2000)(citing Hoffman v. Planters Gin Co., Inc., 358 So.2d 1008, 1011 (Miss. 1978)). "A business invitee is one who is invited to enter or remain on the premises for a purpose connected with the business, while a public invitee is characterized as one who is invited to enter or remain on the premises as [a] member of the public for a purpose for which the land is held open to the public." Id. at 264 (citing Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 763 (Miss. 1989)).

It therefore is incumbent on the plaintiff to show either that negligent conduct on the part of Payless <u>caused</u> a dangerous condition on the sidewalk to arise, or that Payless had occupation or possession and control of the sidewalk in question. <u>Hill</u>, 820 So.2d at 6 (citing <u>Wilson v. Allday</u>, 487 So.2d 793, 796 (Miss. 1986)). Although Cook has failed to show Payless's legal relationship to the sidewalk, Payless does not assert that it did <u>not</u> have occupation or possession and control of the sidewalk; thus, the Court assumes that Payless does not dispute that it had occupation or possession and control of the sidewalk.

"[T]he owner of a business owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or to warn of dangerous conditions not readily apparent, which the owner or occupant knows of, or should know of, in the exercise of reasonable care." <u>Thompson</u>, 923 So.2d at ____ (citing <u>Robinson v. Ratliff</u>, 757 So.2d 1098, 1101 (Miss.App. 2000)). However, "the owner of a business does not insure the safety of its patrons." <u>Id</u>. "There is no duty to warn of a defect or danger which is as well-known to the invitee as to the landowner, or of dangers that are known to the invitee, or dangers that are obvious or should be obvious to the invitee in the exercise of ordinary care." <u>Id</u>. (citing <u>Grammar v. Dollar</u>, 911 So.2d 619, 624 (Miss.App. 2005)).

The third step is to determine whether the defendant breached the duty it owed to the plaintiff. Mississippi law provides three theories upon which a plaintiff may rely in a premises liability

5

claim: (1) that the defendant's own negligence created a dangerous condition which caused the plaintiff's injury; (2) that the defendant had actual knowledge of a dangerous condition but failed to adequately warn the plaintiff of the danger; and/or (3) that the dangerous condition existed for a sufficient amount of time so that the defendant should have known of the dangerous condition. Id. (citing Anderson v. B.H. Acquisition, Inc., 771 So.2d 914, 918 (Miss. 2000)(citing Downs v. Choo, 656 So.2d 84, 86 (Miss. 1995))).

Under each theory, the plaintiff must first prove that a dangerous condition existed. Davis v. United States of America, 2006 WL 533413 *3 (N.D. Miss. March 3, 2006)("The first essential question to be addressed is whether an unreasonably dangerous condition existed."). It is axiomatic that "[i]n order for [the plaintiff] to prove some dangerous condition existed which led to her fall, evidence must be given." Young v. Wendy's International, Inc., 840 So.2d 782, 784 (Miss.App. 2003). The plaintiff "must bring forward 'significant probative evidence demonstrating the existence of a triable issue of fact.'" Id. (quoting Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990). The plaintiff is not allowed to rely on the mere fact that the accident occurred in order to show the existence of a dangerous condition. Id.

In this case, Payless contends that Cook has set forth no evidence other than the accident itself to show that the sidewalk was unreasonably dangerous. Cook admits that there was nothing in the parking lot or on the sidewalk that would have prevented her from watching where she was going. Deposition of Mary Cook, p. 39.

Nor were there any distractions which prevented her from watching where she was going. Id., p. 47. She was alone, the weather was sunny, she was wearing prescription sunglasses, and she was not having any problem seeing. Id., pp. 22, 74.

Payless asserts that Cook "has not pointed to any evidence as to how the sidewalk/parking lot at the Payless store was in an unreasonably dangerous condition at the time Ms. Cook fell, and Payless is entitled to summary judgment." Rebuttal in Support of Motion for Summary Judgment, p. 7. According to Payless,

> Cook's Complaint alleges that "uneven" ground between the parking lot and the sidewalk created a dangerous condition which caused Ms. Cook to fall. In fact, it is at the most a one inch step from the parking lot to the sidewalk. Plaintiff has no evidence to explain how the condition of the sidewalk/parking lot was a "dangerous condition" requiring any action by Payless.

Motion for Summary Judgment, p. 4. Payless further asserts,

> It is common at any retail establishment that [sic] to have to walk from a parking lot to a sidewalk where there is often a step. In fact, Ms. Cook admits that she had already stepped onto the sidewalk with her right foot and by her own testimony she dragged her left foot over the sidewalk lip which made her fall. Exhibit "A" [Deposition of Mary Cook], pg. 46. Plaintiff has offered no evidence of how the sidewalk or parking lot in question was dangerous or how Payless failed to maintain the store in a reasonably safe condition. Walking from a parking lot to a sidewalk are conditions which a customer would expect to encounter (are "normally encountered") at any retail location and which as a matter of law are not dangerous.

Id., p. 5.

Were the facts as clear as Payless has alleged in its motion, it might very well be entitled to summary judgment. However, the plaintiff testified at her deposition as follows:

>    When I walked up to the walkway you call it, my foot got hung on that walk area.  And after my foot got hung it just sort of threw me forward and just spun me around, and I remember my head going into the railing and hitting the ground, my knee hitting the ground, my head going into the railing.  Next thing I know I was on the ground.

Deposition of Mary Cook, p. 46.

>    ...
>
>    Q. [by Mr. Campbell, defendant's attorney]  And you said that your foot got hung at the place where – tell me if this is right.  Did it happen where the sidewalk meets the asphalt of the parking lot?
>
>    A.  Yes.
>
>    Q.  You said that your foot got hung there.  I mean, what do you mean "got hung"?  Because when I think of "hung" I think of like a stiletto heel getting hung in like a crack or something.  That's not what you mean.  What do you mean by "hung"?
>
>    A.  Like – as I was walking the front of my foot on this area right here where there is a low area.
>
>    Q.  And you're pointing to where the parking lot meets the sidewalk there was a –
>
>    A.  Asphalt meets the sidewalk.
>
>    Q.  Yeah, okay.
>
>    A.  Okay.
>
>    Q.  Describe it.  Now your front foot did what, the front of your foot?
>
>    A.  My left foot.
>
>    Q.  Your left foot did what?
>
>    A.  It was my left foot.  It just got hung in this area like the toe area, my shoe on my foot.
>
>    Q.  So was there a crack there that your toe went down into or was it just uneven and your toe caught, or how –
>
>    A.  It was just uneven.  This area – one area is lower than the other.

...

Q. ... It's an uneven area between the sidewalk and the asphalt and the parking lot. Tell me again what happened.

A. My left foot got caught in this area. I stepped up on this side. Evidently my right foot, you know, I stepped up and then when my left foot hung right there in this area where this – it sort of washed away right down in this area.

Q. Okay. I think I'm getting it. Okay. So your right foot had made it onto the sidewalk?

A. Right.

Q. And as you're putting your left foot or pulling your left foot up to make it even or go forward with your right –

A. Right.

Q. – is when it got hung, which is your word –

A. Okay.

Q. – on the side – on the unlevelness and pushed you far?

A. Right.

Q. ... If you had picked up your left foot, do you think you would have walked over that crack or that uneven area?

...

A. I did pick up my foot.

Id., pp. 48-51.

...

Q. [by Ms. McCullough, plaintiff's attorney] But if you could point out exactly the area that caused you to fall?

A. It was this area right here.

Q. And could you maybe draw a line and point to exactly what caused you to trip?

9

>A.  Just an arrow?
>
>Q.  Yes.  And I see from this incline to the asphalt, in between those two areas there is a little worn strip?
>
>A.  Right.
>
>Q.  Now, is that the strip that caused you to have your foot hung and then subsequently fall?
>
>A.  Yes.

Id., p. 76.

>...
>
>Q. ... You would have tripped here.  Put a mark here on this Exhibit 2E to show me where your foot had landed before you fell; could you do that?
>
>A.  Before I fell?
>
>Q.  Yeah.
>
>MR. CAMPBELL: Object to the form.  What foot?
>
>Q.  The right, your right foot, you said you had –
>
>A.  I stepped up.
>
>Q.  Stepped up.  The right foot was obviously on the pavement?
>
>A.  Uh-huh (Affirmative).
>
>Q.  So if you would mark kind of where that would be?
>
>A.  I guess right in here.
>
>Q.  After that foot hit the pavement you then tried to bring your left foot up over the incline, which caused you to fall –
>
>A.  Caused me –
>
>Q.  – because of the worn space?
>
>A.  Right.
>
>MR. CAMPBELL: Object to form.

10

Q. And then you turn, spin –

A. I grabbed.

Q. You grabbed?

A. When I stumbled on this I remember grabbing.

Q. Okay, you grabbed as you –

A. I grabbed. I felt myself falling so I grabbed, and then that's when – you know, it just happened so fast I just spun at that time.

Q. I see. I think I'm a little bit clearer. After your foot fell on the ground, after your right foot hit the ground the left foot was hung; you started to grip for the railing because you were falling?

A. Right.

Q. Which caused you to spin?

A. Right.

Q. Got it. And again, you said you don't go to this Payless or this vicinity very often, so you don't know exactly what cracks and nooks and crannies or anything that are there –

A. No.

Q. – that would cause a patron to fall?

A. No.

Id., pp. 77-79.

...

Q. [by Mr. Campbell, defendant's attorney]  One thing that we have kind of glossed over, and I just want to make sure – can I see this Exhibit here, 2E.
We had talked before and it was unclear – I think we've cleared it up now since you and your attorneys have talked.  You were walking from this way and stepped up here, and your right foot went wherever the X is – yeah, right there.  And then your left foot hung right there, so this would be the parking lot; is that correct?  I mean, you're walking from the parking lot.

A. Coming from the parking lot.

Q. Before this area right here, this area here would be the parking lot; correct?

A. Yes.

...

Q. ... I know this is a close up picture. But from my remembering of being there this is the sidewalk and then it ends and then the parking lot starts. Like this step up is actually – what you're pointing to here is from the parking lot onto the sidewalk?

A. Yeah, this is asphalt.

Q. This is asphalt and this is concrete essentially, is that right? Don't just say okay. If I'm wrong, tell me. But I think this is the asphalt parking lot, and this is the concrete walk way. From what you remember it –

A. Right.

Q. Is that how you remember it?

A. Yes.

Q. So that's going to be important to my next question, so I want to make sure we're all on the same page.

A. Okay.

Q. The little crack here, or the incline as your attorney called it, is where the asphalt meets the concrete of the sidewalk; is that right?

A. .

MS. SHANNON [plaintiff's attorney]: Look at 2B.

MR. CAMPBELL: See what now?

MS. SHANNON: 2B.

MR. CAMPBELL: Yeah, that's a good one. That's one further back.

Q. (By Mr. Campbell) We're looking at 2B now.

A. Okay.

12

Q. Here is the sidewalk. Here's Clay Street. Here's the sidewalk. Here's the guard rail or the assistance rail, whatever you want to call it.

A. Uh-huh (Affirmative).

Q. Over here is where you turn in to go. It's my understanding that this right here is the parking lot?

A. Okay.

Q. And that this is the sidewalk, and that if you put these two together then this area right here would be this area right here, coming across. The area on 2E is a blow up or a close up of 2B.

A. Okay.

Q. Does this make – I mean, do you agree? We're trying to figure out where you fell.

A. It was – I was stepping up in this area right here, because from what I can remember –

...

A. From what I can remember I come in on this side over here, and I'd never seen this little incline, this little washing. It looks like it's just washed away. It's almost as if this was once even, but this is all washed away.

Q. But you're going from the parking lot to the sidewalk?

A. Today, yes.

...

Q. ... Ms. Cook, I know that you had said that you had not walked on this side before coming up from the parking lot to the sidewalk?

A. Right.

Q. If you had been, and I know that nobody does this, but if you had been sitting here staring at this – because she said you had your glasses on; you could see fine; and you had been watching this area right here do you think you would have tripped, or would you have seen that and stepped up?

13

MS. McCULLOUGH: Objection.

Q. Because we have clarified that you had your glasses on, so there is no reading problems. We don't have to worry about any of that. But there is a little step up right here or there's an indention or an incline, whatever you want to call it. And if you had seen that or if you had been looking down at this area right here on 2B, where you're saying that you tripped, would you have just stepped up and kept walking up the sidewalk?

MS. McCULLOUGH: Objection.

Q. Was there anything to keep you from looking down here seeing this and walking up? I mean, was it too high for you to step up? Was there something there that stopped you from just stepping up on this incline?

A. Was it something there that stopped me from stepping up?

Q. Or from seeing it. To just look at it and say, oh, I need to just walk up, just like you did with your right foot do with your left foot?

A. I'm not sure if I can answer that correctly, because I – from what I can remember is that where I stepped up with my right foot, where I walked across – to me, I was just walking across, and so evidently on the right side where I stepped, it wasn't washed like this. So to me, I'm just walking across there.

Q. So to your memory, although I understand a lot has happened since then, that where your right foot was there's no incline or there's no step up, whatever you want to call it?

A. Okay.

Q. And where your left foot would have come across is where the little incline is?

A. It was washed, yes.

Q. Do you remember now thinking back, and I know these are hard memories for you, how much of an incline or a step up – like, was it an inch, two inches?

A. I can't remember now.

...

14

```
EXAMINATION BY MS. McCOLLOUGH:

Q.  Attorney Campbell was just illustrating or asking you
if you had been looking would you have tripped over the
incline.  I think that was the question.  Correct me if
I'm wrong, but the right foot did make it over the
incline; correct?

A.  Right.

Q.  But the left foot, as it was going over the incline
was hung because of the area that was worn away?

A.  Yes.

Q.  Not that you didn't see it, but because it was I
guess almost distorted?

A.  Yes, because I thought, to me, it was just walking.
I was just walking, you know.  Just walking with the
right foot.  I was going to do the same with the left as
far as I can remember.

Q.  So it's not at all that you didn't see it, because
the right foot did make it over?

A.  Yeah.

Q.  And the left foot was about to had it not been hung
by the worn area of the asphalt?

A.  Yes.
```

Id., pp. 84-92.

According to the defendant, the only condition of which the plaintiff complains is the difference in elevation between the parking lot and the sidewalk.  The defendant also states that according to the plaintiff's "own testimony she dragged her left foot over the sidewalk lip which made her fall."  Motion for Summary Judgment, p. 5.

In her deposition, the plaintiff does say that the "area was uneven," but it is unclear whether she is referring to the

15

difference in elevation between the parking lot and the sidewalk, or different parts of the sidewalk itself. Her complaint alleges that she "tripped over a rise in the walkway," which "consisted of a piece of concrete that was not properly marked as being at a different elevation than that of the walkway and it was in disrepair." Complaint, ¶ 9. Although she states that her foot "got hung" where the sidewalk meets the asphalt of the parking lot, her testimony also indicates that she attributes her accident to something more than the mere difference in elevation of the sidewalk and parking lot. She mentions an area which "sort of washed away." Deposition of Mary Cook, p. 49. Elsewhere, she describes the area that caused her to fall as "a little worn strip." Id., p. 76.

Payless's motion is premised on the only dangerous condition being the slight rise in elevation from the parking lot to the sidewalk. It appears that there is a dispute concerning the cause of the accident, and that the plaintiff alleges that there was a defect in the sidewalk itself apart from the change in elevation. The Court therefore finds that there are genuine issues of material fact concerning whether the condition of the sidewalk as alleged by the plaintiff was a condition normally encountered on business premises, see Ware v. Frantz, 87 F.Supp.2d 643, 646 (S.D. Miss. 1999)("Conditions 'normally encountered' on business premises are generally not unreasonably dangerous."), and whether the condition of the sidewalk was readily noticeable to one paying attention. See McNamee v. Jackson Simon Limited Partnership, 2002 WL 31845178

16

(5th Cir. Dec. 3, 2002).

Of course, the mere presence of a factual dispute concerning the presence of a dangerous condition does not mean the plaintiff survives summary judgment.  She must also present evidence (1) that the defendant's own negligence created a dangerous condition which caused her injury; (2) that the defendant had actual knowledge of a dangerous condition but failed to adequately warn her of the danger; and/or (3) that the dangerous condition existed for a sufficient amount of time so that the defendant should have known of the dangerous condition.  Thompson, 923 So.2d at ____.  The plaintiff has the burden of producing evidence sufficient to establish the tort elements of duty, breach of duty, proximate causation, and injury.  Palmer v. Anderson Infirmary Benevolent Ass'n, 656 So.2d 790, 794 (Miss. 1995).

The plaintiff has not offered any evidence of creation of a dangerous condition by the defendant's own negligence.  Regarding actual knowledge, the following exchange is found in the deposition of Linda Lewis, manager of the Payless store:

> Q. [by Ms. McCullough, plaintiff's attorney):  So as the manager, you everyday eyeball the premises as inspection?
>
> A.  Yes, I do.
>
> Q.  That's what you were trained to do?
>
> A.  That's what I was trained to do.
>
> Q.  Could you give me your description of the premises overall?  When I say description, is it new, worn, uneven?  And when I say premises, I'm speaking of the sidewalk, okay, just generally.
>
> A.  Just a regular sidewalk.

>  Q.  Are there cracks, crevasses, well maintained?  You look at it everyday, right?
>
>  A.  Yeah, I look at it.  It's been there but it's maintained.
>
>  Q.  So repairs have been made on it while you have been a manager?
>  A.  I can't remember.

Deposition of Linda Lewis, p. 7.  The evidence on the issue of actual knowledge is inconclusive.  On the other hand, in order to prevail the party moving for summary judgment must demonstrate the lack of a genuine issue of material fact.  <u>Union Planters Nat. Leasing v. Woods</u>, 687 F.2d 117 (5th Cir. 1982).  The defendant has not shown that its employees lacked actual knowledge of the condition of the sidewalk.

Similarly, neither side has addressed the issue of constructive knowledge.  "Constructive knowledge [of a dangerous condition] is present where, based on the length of time that the condition existed, the operator exercising reasonable care should have known of its presence."  <u>Drennan v. Kroger Co.</u>, 672 So.2d 1168, 1170 (Miss. 1996).  Neither side has presented any evidence regarding the length of time the alleged dangerous condition existed prior to the plaintiff's accident.  However, under Mississippi law, negligence in a premises liability action "may be proven even by circumstantial evidence, that is evidence of a fact, or a set of facts, from which the existence of another fact may reasonably be inferred."  <u>Hardy v. K Mart Corp.</u>, 669 So.2d 34, 38 (Miss. 1996)(internal quotations and citation omitted).  However, the "circumstantial evidence must be such that it creates a

legitimate inference that places it beyond conjecture." Id.

Neither side has presented conclusive evidence in support of its position regarding either actual knowledge or constructive knowledge. This premises liability negligence action therefore presents a factual question subject to different determinations, and summary judgment must be denied. See id. at 39 (although it was not evident whether the defendant had actually been negligent or, if it had, whether the negligence was the cause of the fall, the court refused to grant summary judgment because [the plaintiff] might have made out a case if "the facts in this matter [had] been more fully developed"). Accordingly,

IT IS HEREBY ORDERED that the defendant Payless ShoeSource, Inc.'s motion for summary judgment **(docket entry 34)** and supplement thereto **(docket entry 40)** are DENIED.

SO ORDERED, this the 12th day of May, 2006.

S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE